## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

## WESTERN DIVISION

|  |  |  |
|---|---|---|
| | | 3:19-cv-094 |
| | | Walter H. Rice |
| RAAHKIIM BEY, | ) | Civil Action No. _____. |
| Plaintiff, | ) | Magistrate Judge Michael J. Newman |
| -v.- | ) | COMPLAINT FOR DAMAGES |
| RYAN ATWOOD, et al., | ) | |
| NANCY ATWOOD, | ) | |
| Defendants. | ) | |
| _____ | ) | Plaintiff Demands Trial by Jury. |

### STATEMENT OF THE CASE

1.  This instant diversity action arises from, but is not limited to, the following :

    (a). a Fourth Amendment violation in that the Plaintiff's personal property remains seized

    by the Defendants;

    (b). a Mail Fraud violation per Title 18 U.S.C. section 1341;

    (c). a Wire Fraud violation per Title 18 U.S.C. section 1343.

2.  Fraud, much like Murder, Child Molestation, Environmental Infractions (in certain instances),

    and Judicial Misconduct, entails a statute of limitations that is either non-existent, or so

    lengthy in years regarding the window of adjudication, as to render evasion from prosecution

    for the same, ultimately, futile.

## JURISDICTION

3. Jurisdiction is invoked pursuant to the United States Code as follows:

   A. Title 28 U.S.C. section 1331, in that the matter in controversy exceeds the sum of

      $10,000, exclusive of interest and cost, and arises under the Constitution and laws of

      the United States of America.

   B. Title 28 U.S.C. section 1332(a)(1), in that Plaintiff is a resident of Ohio, whereas both

      Defendants are residents of Nebraska.

   C. Title 28 U.S.C. section 1343:

      (1) To recover damages for injury to his person or property, or because of the deprivation

         of any right or privilege of a citizen of the United States, by any act done in

         furtherance of any conspiracy mentioned in section 1985 of Title 42;

      (2) To recover damages from any person who fails to prevent or to aid in preventing any

         wrongs mentioned in section 1985 of Title 42 which he had knowledge were about

         to occur and power to prevent.

   D. Title 28 U.S.C. section 2201, the Declaratory Judgment statute, which allows the Court to

      declare the rights of the parties.

   E. Title 28 U.S.C. section 2202, for further necessary and proper relief based on a declaratory

      judgment.

   F. Title 42 U.S.C. section 1981.

   G. Title 42 U.S.C. section 1985(3) and 1986.

   H. Title 28 U.S.C. section 1651, the All Writs Act.

   I. All of the above-mentioned statutes, but not limited thereto.

## VENUE

4. Venue for this diversity action is proper under Title 28 U.S.C. section 1391(b)(2).

   Provided that proper service upon the defendant has been delivered in the proper territory as per Fed. R. Civ. P. 4, plaintiff may bring diversity action in the judicial district where he (plaintiff) resides. See Goldlawr, Inc., v. Heiman, 369 U.S. 463, 468 (1962).

5. Plaintiff participated in Defendants' Ebay Seller's auction online from home in Ohio.

6. The property relevant to this case constitutes funds, debited by Defendants, from Plaintiff's VISA card in Ohio.

7. Defendants mailed a materially misrepresented item to Plaintiff in Ohio.

8. The materially false nature of the mailed item was discovered in Ohio.

9. In terms of an interstate channel, Defendants are relying upon being shielded from prosecution by way of their residence in Nebraska.

## PARTIES

10. Plaintiff, Raahkiim Bey, resides at 2420 Acorn Drive, Kettering, Ohio, 45419.

11. Defendant, Ryan Atwood, is listed as having a residence of 9362 Maplewood Boulevard, Omaha, Nebraska, 68134.

12. Defendant, Nancy Atwood, is listed as having a residence of 9362 Maplewood Boulevard, Omaha, Nebraska, 68134.

## STATEMENT OF FACTS

13. On the night of Sunday, March 4, 2018, Defendant Ryan Atwood (Ebay Seller username
    "savagegunsandcoins") held an Ebay Seller's auction for the sale of a disassembled item he
    labeled as a "Hi-Point 995 9mm Carbine 16" Barrel Bolt Shroud Stock Trigger Safety,"
    item # "323101023962" (hereinafter "the item"). [See Exhibit-A].

14. Plaintiff (Ebay username "rbey5840"), from home, participated in and, ultimately, won said
    auction with a bid amount of $117.50. Once ended, Plaintiff clicked onto a PayPal.com portal
    linked with Defendant's Ebay Seller account, where Plaintiff paid a total amount of $127.50.
    [See Exhibit-B].

15. Following the purchase of the item, Plaintiff submitted two (2) inquiries to Defendant
    regarding the item, for which Plaintiff received no answers. [See Exhibit-C].

16. After all, Defendant encouraged the "ask[ing]" of "questions." [See Exhibit-D].

17. On March 22, 2018, the item arrived on the front porch of Plaintiff's address some time prior
    to his return home from work, having been shipped there by Defendant Nancy Atwood via
    the United States Postal Service ("USPS"). [See Exhibit-E].

18. Once opened, found inside the parcel were contents shown to be separately wrapped as follows :

- Rifle Stock (in brown elongated paper),

- Barrel (in brown elongated paper),

- Barrel Shroud and Receiver Shroud (in old newspaper),

- Breech Bolt, Recoil Spring, Firing Pin, Receiver Clip, Firing Pin Spring, Bolt Retainer and other smaller components, all contained within a resealable plastic bag (also inside old newspaper).

19. The number "40" (which Plaintiff took to be an indication that this item had been the 40th rifle made), metal-stamped on the inside roof of the Breech Bolt, constituted the only other number which Plaintiff could locate on any of the item's components. [See Exhibit-F].

20. The item's model number, located on the left side of the Receiver Shroud, clearly indicated that the item was a "4095", not a "995." [See Exhibit-G].

21. Being aware of Hi-Point Firearms' Lifetime Warranty policy, and after making sure that the item was as it had been received, Plaintiff stapled together a packet which included :

- a copy of the purchase documentation,

- a yellow highlighted handwritten notation (in blue ink) indicating that the metal-stamped number "40" was "the closest thing to a Serial Number that Plaintiff could find on the item,

- a U.S. Postal Money Order in the amount of $50.00 to cover the shipping and handling costs of Hi-Point sending the item back to Plaintiff. [See Exhibit-H].

22. On March 28, 2018, Plaintiff shipped the item to Hi-Point Firearms in Mansfield, OH, by way of the United Parcel Service ("UPS") West Carrollton Terminal, given that said UPS terminal is the only mail carrier with the requisite licensure to ship firearms to a Federal Firearms License ("FFL") holder.

23. Once inside said UPS terminal, the Employee there visually inspected the following :

- the contents inside the parcel,
- photos of the contents inside the parcel,
- all sales documentation regarding the contents inside the parcel,
- Plaintiff's State of Ohio issued Driver's License,

before finally granting Plaintiff a shipping label for the parcel. [See Exhibit-I].

24. The parcel, having been accepted for shipment once the label was affixed to it, was then placed onto the conveyor rollers, along with several other parcels unrelated to Plaintiff.

25. On April 2, 2018, Plaintiff clocked out for lunch break at work, unlocked his cellphone for a podcast and was heading towards the employee parking lot, when a cellphone notification alerted him to a missed call. Once outside the building and finally inside his car, Plaintiff called the number designated as "missed" by the phone's Call Log.

26. Following a few seconds of ringing, a receptionist for Hi-Point Firearms (a nice woman whose name I do not recall) answered, and after Plaintiff explained why he was calling and what he had mailed to Hi-Point, the receptionist asked that Plaintiff hold on before transferring him over to a management representative.

27. At that moment, Plaintiff began speaking with a representative named Mike Harschel (1-419-747-4385; again, my Apologizes if his last name has been misspelled), who informed Plaintiff of a number of issues encountered with the item that had been sent :

    • the Firing Assembly of the item had apparently been sawed off intentionally,

    • the Serial Number for the item had apparently been removed intentionally,

    • and that because of the issues found, the item, therefore, could not be refurbished as per Hi-Point's Lifetime Warranty.

28. Plaintiff responded that he understood, and thanked him for his time. Prior to ending the call, Mr. Harschel made the following statement to Plaintiff verbatim :

    *"You've got to watch out for this stuff. Good luck."*

29. On April 3, 2018, upon returning home from work, Plaintiff logged into his Ebay account and began the Item Return process (Return Id. # 5080679224). In an Ebay account message to Defendant Ryan Atwood, Plaintiff stated both that he was returning the item and why, along with additional comments further detailing the formal seeking of a refund of Plaintiff's money following the return of the item. [See Exhibit-J].

30. During that same evening (April 3), Plaintiff received a response from Defendant Ryan Atwood that he (Defendant) had *"more 995 kits."* [See Exhibit-K].

31. Plaintiff took the response as odd, given that the item was :

   - a 4095 (not a "995"), and that

   - Defendant was offering *"kits"*, which was something that he claimed not to sell.

     [See Exhibit-A.3].

32. Plaintiff, in turn, sent Defendant Ryan Atwood three questions in regard to the *"995 kits."* [See Exhibit-L]. Defendant actually provided answers to these questions, even going so far in one answer as to state that the destruction of the Serial Number for the item was *"earmarked... by a judge"*, before further stating that Plaintiff could receive a *"replacement"*, or that Defendant would *"refund* [Plaintiff] *in full"*, clearly stating in closing that it was the *"...*[Plaintiff's] *choice."* [See Exhibit-M].

33. On Friday evening, April 6, 2018, Plaintiff logged into his Ebay.com account again to find a message from Defendant Ryan Atwood stating that he (Defendant) had not *"...heard from any body in a while."* Defendant also stated that while he was still *"...working on getting pictures sent"* to Plaintiff regarding the *"995 kits"*, he would *"refund in full or send a new kit."* [See Exhibit-N].

34. During that same evening (April 6), Plaintiff sent Defendant Ryan Atwood a response within which Plaintiff :

- gave Defendant a specific day as to when the item would be shipped to him,

- declined Defendant's offer of a *"replacement"* item, and

- accepted the refund option. [See Exhibit-O].

35. On Monday evening, April 16, 2018, 4:18 pm, Plaintiff shipped the item back to Defendants by way of the United Parcel Service ("UPS") West Carrollton Terminal. The same Employee again visually inspected the following :

- the contents inside the parcel,

- photos of the contents inside the parcel,

- all sales documentation regarding the contents inside the parcel,

- Plaintiff's State of Ohio issued Driver's License,

before affixing a shipping label onto the parcel and sending it along the conveyor rollers. [See Exhibit-P].

COMPLAINT_/_28_USC_1332.                                                    PAGE: 9 of 27.

36. Later during that week, UPS Tracking verified that the item had indeed been received by at least one of the Defendants at their residence at approximately 5:10 pm, on Thursday, April 19, 2018. [See Exhibit-Q].

37. Following the return of the item to the Defendants, Plaintiff would periodically check his PayPal account to see if the amount of $127.50 had been honored by Defendant Ryan Atwood and refunded to Plaintiff. And each time, Plaintiff's account would show that the amount had not been refunded.

38. Plaintiff then sent Defendant Ryan Atwood another Ebay message formally requesting that Defendant Ryan Atwood provide a date upon which he (Defendant) would provide Plaintiff's with a refund. [See Exhibit-R]. Defendant provided no response.

39. Finally, on June 13, 2018, at 4:17 pm, Plaintiff logged onto his PayPal account and utilized PayPal's services template to generate an invoice for the non-refunded amount, which Plaintiff then forwarded to Defendant's email address ("wda1974@yahoo.com") through PayPal [See Exhibit-S].

40. To date, Defendant Ryan Atwood has not provided a refund, and continues to provide no further response to Plaintiff.

## LEGAL CLAIMS

41. The facts related above disclose a concerted effort by the Defendants to deprive Plaintiff of his both constitutionally and statutorily secured rights, including, but not limited to, those enumerated in the succeeding paragraphs.

## FIRST CLAIM FOR RELIEF

42. Sentences or paragraphs 1 through 41 of the Complaint are realleged and incorporated by reference.

43. Defendants, knowingly, recklessly, or culpably, continue to withhold Plaintiff's monetary property with intent to deprive him of the right to be secure against the unreasonable seizure of property, in violation of the Fourth Amendment of the United States Constitution.

44. The first Clause of the Fourth Amendment provides that :

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…"

(Emphasis added).

45. *Effects* : Movable property; goods (personal effects). See Black's Law Dictionary, 5th Ed., p. 289.

46. *Seizure* : The act of an instance of taking possession of a person or property.

    See Black's Law Dictionary, 5th Ed., p. 706.

47. Within the context of the present diversity action, the intent by the Defendants to seize is

    synonymous with the intent to defraud or steal.

48. *Steal* : (1) To take (personal property) illegally with the intent to keep it unlawfully.

        (2) To take (something) by larceny, embezzlement, or false pretenses.

        See Black's Law Dictionary, 5th Ed., p. 742.

49. Concerning stolen property, the U.S. Supreme Court, as far back as Boyd v. United States,

    116 U.S. 616 (1886), has stated the following :

        "In the case of stolen goods, the owner from whom they were stolen is

        entitled to their possession." See Boyd, supra at 624, n. 47.

50. The Fourth Amendment protects certain important interests (injunction against

    unreasonable searches and seizures) equally, in the same manner. See Horton v. California,

    496 U.S. 128, 143 (1990). Indeed, the Fourth Amendment protects both property and

    privacy, both together and separately.

51. A seizure deprives the individual of dominion over his or her person or property.

    See Horton, 496 U.S. at 133.

52. See <u>Newsome v. Erwin</u>, 137 F. Supp. 934, 948 n. 7 (S.D. Ohio 2000).

In a midwest case involving the seizure and destruction of an owner's property (animals) by a Greene County Sheriff, the Honorable Senior District Judge Walter H. Rice delivered the opinion of the court :

> "The Supreme Court has recognized… that the Fourth Amendment's prohibition on unreasonable seizures protects not just privacy rights, but also an individual's property rights…" *Cf.* <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56, 62-63, 113 S. Ct. 538, 121 L.Ed.2d 450 (1992) (holding that the Fourth Amendment "protects property as well as privacy")."

53. Possessory interests in property protected by the Fourth Amendment are affected when even a temporary deprivation of possessory interests are converted into a permanent one. See <u>United States v. Jacobsen</u>, 466 U.S. 109, 124-25 (1984).

54. Fourth Amendment "standing" is properly subsumed provided that a person has a cognizable interest in the place searched (or property seized) before seeking relief for an unconstitutional search (or seizure). See <u>Byrd v. United States</u>, 584 U.S. ___ (2018) (citing <u>Rakas v. Illinois</u>, 439 U.S. 128, 139 (1978)).

55. Plaintiff has been damaged in his constitutional rights and property.

56. Plaintiff has stated a claim upon which relief can be granted.

COMPLAINT_/_28_USC_1332.

## SECOND CLAIM FOR RELIEF

57. Sentences or paragraphs 1 through 56 of the Complaint are realleged and incorporated by reference.

58. Defendants knowingly, recklessly, or culpably, engaged in a scheme utilizing the United States Postal Service to cause a materially misrepresented item to travel interstate in an altered condition in violation of 18 U.S.C. section 922(k), in furtherance of conduct including, but not limited to, depriving Plaintiff of the right to be secure against the unreasonable seizure of monetary property, in violation of 18 U.S.C. section 1341.

59. Title 18 U.S.C. section 1341, the federal mail fraud statute, is based upon the Postal Power found in Article 1, Section 8, Clause 7 of the United States Constitution, with applicable jurisdiction to all items passing through the United States mails, whether intrastate or interstate. See United States v. Elliott, 89 F.3d 1360, 1363-64 (8th Cir. 1996).

60. The focus of the statute is upon the misuse of the Postal Service, over which Congress has regulatory authority. See United States v. Cady, 567 F.2d 771, 776 n. 7 (8th Cir. 1978).

61. Title 18 U.S.C. section 922, the Unlawful Acts statute, is one of a number of Congressional enactments governing the manufacture, importation, or dealership of firearms in interstate or foreign commerce.

62. The words "to defraud" within the statute have the "common understanding" of "'wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" See McNally v. United States, 483 U.S. 350, 358 (1987). The mail fraud statute "had its origin in the desire to protect individual property rights." *Id.* at 359.

63. The elements of mail fraud are identical to those of wire fraud, and are considered together as predicate acts. See Carpenter v. United States, 484 U.S. 19, 25 n. 6 (1987).

64. Mail fraud occurs when a person intentionally participates in a scheme to defraud another of money or property, and, uses the mails in furtherance of that scheme. See United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989).

65. A scheme to defraud need not be carried out to constitute a violation of the mail and wire fraud statutes. These statutes punish unexecuted, as well as executed, schemes. See Durland v. United States, 161 U.S. 306, 313-15 (1896); also Shale v. United States, 388 F.2d 616, 618-19 (5th Cir. 1968).

66. Mail and wire fraud, just like common law fraud, thus entail "a[n] intention to induce the [victim] to act or to refrain from action in reliance upon the misrepresentation." See Pelletier v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991).

67. Plaintiff has stated a claim upon which relief can be granted.

## THIRD CLAIM FOR RELIEF

68. Sentences or paragraphs 1 through 67 of the Complaint are realleged and incorporated by reference.

69. Defendants knowingly, recklessly, or culpably, engaged in a scheme to defraud through the deprivation of Plaintiff's right to honest services in violation of 18 U.S.C. section 1346, by using interstate wires to charge the VISA card connected with Plaintiff's PayPal account for payment of an item materially misrepresented by the Defendants, in violation of 18 U.S.C. section 1343.

70. Title 18 U.S.C. section 1346, the honest services statute, which governs that for purposes of the federal crimes of mail and wire fraud, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

71. The three most prominent requirements for triggering the implication of the honest services statute include "private gain," a "state law violation," and "foreseeable harm."

72. The phrases "private gain" and "personal gain" are not meaningfully different. See United States v. Sorich, 523 F.3d 702, 708-09 (7th Cir. 2008) ("private gain… simply mean[s] illegitimate gain, which usually will go to the defendant, but need not").

73. The seizure of Plaintiff's monetary property easily satisfies the "private gain" test.

74. Concerning the "state law violation" requirement, the honest services in question must be
shown to be owed or expected under state law. See United States v. Brumley,
116 F.3d 728, 734 (5th Cir. 1997).

75. At the time of the seizure of Plaintiff's property, the funds stolen by the Defendants
originate from Plaintiff's VISA card, which was (and is) located within the district of Ohio.

76. Defendants, when transacting with citizens of Ohio by way of interstate channels
(i.e., the internet), know and are expected to know that Ohio, much like every other State,
has laws in place to insure the protection of consumers against unethical merchant practices
(including those of online "Sellers"), should such conduct arise. [See Exhibit-T].

77. The Ohio Constitution, Art. 1, sec. 1, clearly designates the "acquiring, possessing,
and protecti[on] [of] property" as "inalienable rights."

78. The Ohio Revised Code ("O.R.C.") 2305.09, the four years - certain torts statute, provides :
"(B) For the recovery of personal property, or for taking or detaining it;"
"(C) For relief on the ground of fraud."

79. Defendants incur the responsibility to know what laws, state and federal, govern the activities
of their enterprise whenever Defendants seek to do business within a given State or district.
See Lambert v. California, 355 U.S. 225, 228 (1957) (Ignorance of the law is no excuse).

80. Under state and federal law, Defendants, as "Sellers" or private sector merchants, have a fiduciary obligation to transact ethically and in a lawful manner with consumers through providing honest services. [See Exhibit-T].

81. Defendant Nancy Atwood, as an example, may be found to have violated an underlying state law fiduciary duty even if she purports to have acted, as a co-owner or employee, in Defendant Ryan Atwood's best interest. See United States v. Skilling, 554 F.3d 529, 545-47 (5th Cir. 2009).

82. Absent an immunity guaranty, the proprietor of an enterprise, "whether corporate or individual," and "all persons who aid and abet" the commission of an offense by the corporation or enterprise "are equally guilty."
See United States v. Dotterweich, 320 U.S. 277, 283-84 (1943).

83. The United States Constitution's Fifth and Fourteenth Amendment due process requirements forbid any citizen from being deprived of their "property" interests.
See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

84. The Ohio Constitution, employing the phrase, "due course of law," imposes the same requirement. See Adler v. Whitbeck, 44 Ohio St. 539, 569, 9 N.E. 672 (1886).

85. Violation of state law critical in discerning acceptable deal-making apart from deprivation of right to honest services. See United States v. Carbo, 572 F.3d 112, 118 (3rd Cir. 2009).

COMPLAINT_/_28_USC_1332.                                                    PAGE: 18 of 27.

86. "Private individuals, such as [the Defendants]…, may commit mail [or wire] fraud by

   breaching a fiduciary duty and thereby depriving the person or entity to which the duty is

   owed of the intangible right to the honest services of that individual."

   See United States v. Frost, 125 F.3d 346, 366 (6th Cir. 1997).


87. "Depriving [a consumer] of one's honest services and of [the] right to have… business

   conducted honestly [with the consumer] can constitute a 'scheme to defraud….'"

   See United States v. Bohonus, 628 F.2d 1167, 1172 (9th Cir. 1980).


88. Section 1346 theory can support the conviction of a private defendant.

   See United States v. Sun-Diamond Growers of Cal., 138 F.3d 961, 973 (D.C. Cir. 1998).


89. "[A]lthough the honest services theory of mail fraud is directed primarily at the deterrence

   and punishment of corruption among public officials, the courts have consistently recognized

   the statute's province to encompass dishonest acts perpetrated in private commercial

   settings." See United States v. Vinyard, 266 F.3d 320, 326 (4th Cir. 2001).


90. See United States v. Szur, 289 F.3d 200, 208-12 (2d Cir. 2002) :

   Honest services mail-and-wire-fraud convictions of principals of a brokerage and issuer of

   securities who conspired to pay stock brokers excess compensation, not disclosed to their

   customers, for selling the issuer's securities.

91. "Although the bulk of the pre-*McNally* honest-services cases involved employees,

we see no reason the principle they establish would not apply to other persons who assume

a legal duty of loyalty comparable to that owed by an officer or employee to a private entity."

See United States v. Rybicki, 354 F.3d 124, 142 n. 17 (2d Cir. 2003) (convictions of

two private lawyers for mail and wire fraud on the ground that they were giving

illegal payments to insurance claim adjusters with the intent of inducing the adjusters to

expedite the settlement of certain claims. *Id.* at 127.).

92. See United States v. Louderman, 576 F.2d 1383, 1387 (9th Cir. 1978) :

Convictions of two private citizens affirmed under section 1343 on the ground that the

defendants' actions deprived targeted individuals of their right to privacy and of a service for

which they were paying.

93. Section 1346 theory applies to private-sector defendants but that such cases must involve

a breach of fiduciary duty and reasonably foreseeable harm.

See United States v. Devegter, 198 F.3d 1324, 1330 (11th Cir. 1999).

94. The notion of harm in a mail or wire fraud prosecution is important only in the sense that

proof of actual harm to the victim or others is one means of establishing the necessary intent

to defraud. See United States v. Cochran, 109 F.3d 660, 665 (10th Cir. 1997) (acknowledging

"that where actual harm exists as a natural and probable result of a scheme, fraudulent

intent may be inferred.").

95. Concerning the "foreseeable harm" requirement, nearly half of the federal courts of appeals that have addressed the honest services statute from the private-sector context that the statute requires proof that the defendant intended, or at least reasonably could have foreseen, that the scheme would cause economic or property harm to the victim.

96. The reasonably foreseeable harm test is limited to "economic or pecuniary harm."
See United States v. Rybicki, 287 F.3d 257, 266 (2d Cir. 2002).

97. In contrast, the "materiality" test has been held as preferable to the "foreseeable harm" test, given that "materiality" has virtue rising out of fundamental principles of the law of fraud : A material misrepresentation is an element of the crime.
See United States v. Bronston, 658 F.2d 920, 927 (2d Cir. 1981).

98. Some courts have outright rejected the foreseeable harm test altogether.
See United States v. Welch, 327 F.3d 1081, 1104-06 (10th Cir. 2003) ("An intent to inflict economic harm on or injure the property rights of another is not an element of federal mail or wire fraud.").

99. Defendants reasonably should have foreseen, as understandably as any ordinary person, that Plaintiff would suffer economic injury as a result of the seizure of his monetary property by the Defendants.

100.    Title 18 U.S.C. section 1343, the federal wire fraud statute, is based upon the Commerce

        Power found in Article 1, Section 8, Clause 3 of the United States Constitution, which

        applies to transmittals of "any writings, signs, signals, pictures, or sounds" "by means

        of radio, wire, or television communication in interstate or foreign commerce."

101.    Interpretive case law regarded as interchangeable between section 1341 and 1343.

        See Pelletier, 921 F.2d. at 1498.

102.    Both mail and wire fraud, as predicate acts, are accorded the same analysis by the Court.

        See Carpenter, 484 U.S. at 25.

103.    Wire Fraud, to be proven, requires the following elements : (1) a defendant's knowing

        and willful participation in a scheme or artifice to defraud, (2) with specific intent to

        defraud, and (3) the use of interstate wire communications in furtherance of the scheme.

        See United States v. Andrews, 681 F.3d 509, 518 (3d Cir. 2012).

104.    To "cause" the interstate wires to be used, the use of the wires need not be actually

        intended; it need only be reasonably foreseeable. See United States v. Ross,

        131 F.3d 970, 984-85 (11th Cir. 1997).

105.    Wire Fraud entails "a[n] intention to induce the [victim] to act or to refrain from action

        in reliance upon [a] misrepresentation." See Pelletier, 921 F.2d at 1499.

106. "[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when under a duty to do so."
See Chiarella v. United States, 445 U.S. 222, 228 (1980).

107. Wire Fraud violations entail a scheme to defraud another of money or property, and, uses the wires in furtherance of that scheme. See Downs, 870 F.2d at 615.

108. A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, upon which a person of ordinary prudence would rely, which have a natural tendency to influence, or capable of influencing, the decision maker to whom it is addressed. See Neder v. United States, 527 U.S. 1, 16 (1999).

109. The wire fraud statute requires use of the wires to be of an interstate nature.
See Smith v. Ayres, 845 F.2d 1360, 1366 (5th Cir. 1989).

110. Transmission by wire is an integrated system of both intrastate and interstate commerce.
See Lipinski v. United States, 251 F.2d 53, 55-56 (10th Cir. 1958).

111. To violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentation. The transmission itself need not be essential to the success of the scheme to defraud. An interstate wire transmission is "for the purpose of executing" the scheme to defraud if it is "incident to an essential part of the scheme" or "a step in the plot." See Schmuck v. United States, 489 U.S. 705, 710-15 (1989).

112.    Fraud involves deviation from conduct that is a "reflection of moral uprightness, of

fundamental honesty, fair play and right dealing in the general and business life

of members of society." See Gregory v. United States, 253 F.2d 104, 109 (5th Cir. 1958).

113.    Whether Defendants have used or invested, or conspired to use or invest, directly or

indirectly, such monetary property, or any proceeds of such monetary property as

seized from Plaintiff, in the operation of Defendants' Ebay firearms sales business,

shall be discerned upon completion of discovery and an amended complaint.

114.    Neither the words of Section 1346, nor its context, suggests even the most nascent public-

corruption-only mandate. It refers, without limitation, to "the intangible right of honest

services," and, sections 1341 and 1343 contain no special references to public corruption.

115.    Any ordinary person would reasonably understand that the actions of the Defendants

were proscribed by statutes which criminalize, and make actionable, the use of the

mails and wires to perpetrate fraud.

116.    Where a relationship "fiduciary in nature" exists between a defendant and his intended

victims, the federal fraud statutes are broadly interpreted and were intended by Congress

to "protect the careless and the naïve from lupine predators...."

See United States v. Kreimer, 609 F.2d 126, 131-32 (5th Cir. 1980).

117.    Plaintiff has stated a claim upon which relief can be granted.

COMPLAINT_/_28_USC_1332.                                    PAGE: 24 of 27.

**PRAYER FOR RELIEF**

118.   WHEREFORE, Plaintiff seeks judgment, jointly and separately, against both Defendants

as follows :

(1).   Trial by jury on all issues triable by jury;

(2).   Compensatory damages in the amount of $88,612.50 total, or $44,306.25 per each

Defendant (which in aggregate translates into $127.50 per day for every day that

the amount stolen from Plaintiff has been in the unlawful possession of the

Defendants up until the time of the present diversity action);

(3).   Punitive damages to be determined by a jury;

(4).   The costs of bringing this action, including reasonable attorney fees and expert

witness fees;

(5).   Leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a), once discovery is

completed, and the Defendants have raised the usual objections and avalanche of

procedural gimmicks;

COMPLAINT_/_28_USC_1332.                                    PAGE: 25 of 27.

(6). A declaratory judgment that the acts of Fraud, complained of within the Second and

Third claims for relief, be declared as predicate acts under R.I.C.O. (Racketeer

Influenced and Corrupt Organizations Act), 18 U.S.C. section 1961, et seq.;

(7). An injunctive order barring the Defendants from selling firearms indefinitely;

(8). The granting of such other and further relief as this Court deems just, proper, and

equitable.

Dated : December 28, 2018.                    Respectfully Submitted,

Raahkiim Bey

2420 Acorn Drive

Kettering, OH, 45419

**VERIFICATION**

The foregoing Complaint, by the hand of I, Raahkiim Bey, is given while subject to the

penalty of perjury, pursuant to Title 28 U.S.C. section 1746.

Raahkiim Bey

# CERTIFICATE OF SERVICE

This certifies that I, Raahkiim Bey, have on this _1_ day of _April_, 2019, furnished a third uninterested party effecting service with a true and exact copy of the foregoing :

**COMPLAINT FOR DAMAGES**,

to be served upon the Defendants listed below, with the accompanying addresses, as follows :

Ryan Atwood

9362 Maplewood Boulevard

Omaha, Nebraska, 68134

Nancy Atwood

9362 Maplewood Boulevard

Omaha, Nebraska, 68134

_____

Raahkiim Bey